# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 13, 2025

Lyle W. Cayce
Clerk

No. 24-60601

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ARNETT JACKSON BONNER,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:23-CR-144-1

Before BARKSDALE, WILLETT, and DUNCAN, *Circuit Judges*.
PER CURIAM:

Arnett Jackson Bonner pleaded guilty to possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Bonner's felony convictions include drug trafficking and being a felon in possession of a firearm. On appeal, he argues § 922(g)(1) violates the Second Amendment under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), both facially and as applied to him. Bonner also argues § 922(g)(1) is

unconstitutionally vague, exceeds Congress's power under the Commerce Clause, and violates the Equal Protection Clause.[1]

Bonner concedes this circuit's precedent forecloses his facial and Commerce Clause challenges. *See United States v. Diaz*, 116 F.4th 458, 462, 471–72 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025). He raises these claims only to preserve them for further review. The Government contends all of Bonner's challenges are foreclosed, citing *Diaz* and several other recent decisions by our court.

We agree with the Government: All Bonner's challenges are now foreclosed in this circuit. *See, e.g.*, *id.* at 471–72 (rejecting § 922(g)(1) facial Second Amendment and Commerce Clause challenges); *United States v. Branson*, 139 F.4th 475, 477–79 (5th Cir. 2025) (rejecting § 922(g)(1) unpreserved vagueness challenge); *United States v. Goody*, 143 F.4th 617, 619 (5th Cir. 2025) (per curiam) (rejecting § 922(g)(1) Equal Protection challenge); *United States v. Kimble*, 142 F.4th 308, 309, 315–17 (5th Cir. 2025) (rejecting as-applied Second Amendment challenge to § 922(g)(1) for appellant with prior felony drug trafficking conviction because "disarming drug traffickers accords with the nation's history and tradition of firearm regulation").

AFFIRMED.

---

[1] Bonner initially argued on appeal that the district court erred by denying his motion to suppress. But Bonner correctly concedes in his reply brief that the issue is barred by his plea agreement's waiver provision.

Don R. Willett, *Circuit Judge*, joined by Stuart Kyle Duncan, *Circuit Judge*, concurring:

Like every congressional enactment, a federal criminal statute must satisfy two constitutional demands. First, it must rest on one of Congress's "few and defined" powers.[1] And second, it must respect the many constitutional provisions that secure individual rights against government intrusion. I am not certain that the statute under which Arnett Jackson Bonner was sentenced—18 U.S.C. § 922(g)(1)—meets either requirement (at least as federal courts have interpreted it). If it does not, then the "offence created by it is not a crime," and "[a] conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment."[2]

Even so, while I harbor doubts that § 922(g)(1) is constitutional, I have no doubt about what our precedent requires. For that reason, I join the majority opinion, which faithfully applies controlling authority to reject each of Bonner's challenges. I write separately to highlight two ways in which our jurisprudence may have strayed from first principles.

## I

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution."[3] And although those powers "are sizable, . . . they are not unlimited."[4] That means, among other things, Congress has no power to enact a comprehensive criminal code. As Chief

---

[1] The Federalist No. 45, at 292 (James Madison) (Clinton Rossiter ed., 1961).

[2] *Ex parte Siebold*, 100 U.S. (10 Otto) 371, 376–77 (1879).

[3] *United States v. Morrison*, 529 U.S. 598, 607 (2000).

[4] *Moore v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018).

Justice Marshall—no skeptic of national power[5]—explained, "It is clear, that Congress cannot punish felonies generally."[6] In short, not everything we may want to criminalize can be criminalized by the *federal* government. For example, "Congress has a right to punish murder in a fort, or other place within its exclusive jurisdiction," but it has "no general right to punish murder committed within any of the States."[7]

As relevant here, § 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."[8] On its face, the phrase "in or affecting commerce" might appear to require a genuine commercial nexus— placing § 922(g)(1) squarely within Congress's power "[t]o regulate Commerce . . . among the several States,"[9] or perhaps within its authority "[t]o make all Laws which shall be necessary and proper for carrying into Execution" that power.[10] But in *Scarborough v. United States*, the Supreme Court interpreted § 922(g)(1)'s predecessor far more broadly, reading "in or affecting commerce" to demand no more than "the minimal nexus that the

––––––––––––––––––––––

[5] *See, e.g.*, *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824); *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819).

[6] *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 428 (1821).

[7] *Id.* at 426.

[8] 18 U.S.C. § 922(g)(1).

[9] U.S. CONST. art. I, § 8, cl. 3.

[10] *Id.* art. I, § 8, cl. 18; *see Taylor v. United States*, 579 U.S. 301, 312 (2016) (THOMAS, J., dissenting) ("Beyond the four express grants of federal criminal authority . . . Congress may validly enact criminal laws only to the extent that doing so is 'necessary and proper for carrying into Execution' its enumerated powers or other powers that the Constitution vests in the Federal Government." (citation omitted)).

firearm have been, at some time, in interstate commerce."[11] Applying that interpretation to § 922(g)(1), we have held that the Government need show only that a firearm was manufactured in one State and later discovered in another.[12] The Supreme Court has gone further still, suggesting that a defendant need not even know the firearm ever crossed state lines.[13]

So construed, it is difficult to see how § 922(g)(1) honors the principle of enumerated powers. In *United States v. Lopez*, the Supreme Court "identified three broad categories of activity that Congress may regulate under its commerce power."[14] "First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce."[15]

Mere possession of a firearm fits uneasily within any of these categories.[16] The closest candidate might be "activities that substantially affect interstate commerce"—after all, some have argued that "widespread,

---

[11] 431 U.S. 563, 575 (1977) (footnote omitted).

[12] *United States v. Rawls*, 85 F.3d 240, 243 (5th Cir. 1996) (per curiam).

[13] *See Rehaif v. United States*, 588 U.S. 225, 230 (2019).

[14] 514 U.S. 549, 558 (1995).

[15] *Id.* at 558–59 (citations omitted).

[16] *See United States v. Patton*, 451 F.3d 615, 620–34 (10th Cir. 2006) (analyzing a similar ban on possessing body armor under *Lopez*).

firearm-related crime" has a substantial effect on the national economy.[17] But whatever the effect of such "widespread" crime, the economic consequences of Bonner's individual act of possession is hardly "substantial." At best, § 922(g)(1) can meet the substantial-effects test only by aggregating the impact of all firearm possession by felons. Yet aggregation is ordinarily appropriate only when the underlying activity is economic—and firearm possession is not.[18] As the Supreme Court explained in *United States v. Morrison*, "[t]he Constitution requires a distinction between what is truly national and what is truly local."[19] And it is, indeed, "hard to imagine a more local crime than this."[20]

While we have acknowledged the force of this objection, we have "regard[ed] *Scarborough* . . . as barring the way."[21] But it was not *Scarborough*'s holding that led us to that conclusion; as we have noted, "*Scarborough* addresses only questions of statutory construction, and does not expressly purport to resolve any constitutional issue."[22] Instead, we have relied on what we took to be *Scarborough*'s "*implication* of

---

[17] *United States v. Synnes*, 438 F.2d 764, 768 (8th Cir. 1971), *vacated on other grounds*, 404 U.S. 1009 (1972); *see also Lopez*, 514 U.S. at 563–66 (recounting—but ultimately rejecting—similar arguments from the dissent and the Government).

[18] *See GDF Realty Invs. v. Norton*, 326 F.3d 622, 630 (5th Cir. 2003) ("[T]he key question for purposes of aggregation is whether the nature of the regulated activity is economic."); *Lopez*, 514 U.S. at 567 ("The possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce.").

[19] 529 U.S. at 617–18.

[20] *United States v. Seekins*, 52 F.4th 988, 990 (5th Cir. 2022) (HO, J., dissenting from denial of rehearing en banc).

[21] *United States v. Kuban*, 94 F.3d 971, 973 n.4 (5th Cir. 1996).

[22] *Rawls*, 85 F.3d at 243 (GARWOOD, J., specially concurring) (joined by WIENER, J., and GARZA, J.).

constitutionality."[23] Yet a decision like *Scarborough*—in which the Commerce Clause "was not at issue, and was not so much as mentioned in the opinion"—is "scant authority" on the meaning of that Clause.[24] In concluding otherwise, we have strayed from the Supreme Court's considered interpretations of the Commerce Clause in *Lopez*, *Morrison*, and *NFIB v. Sebelius*,[25] and from its admonition that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."[26]

The pseudonymous Anti-Federalist Brutus objected to Congress's powers under the new Constitution, fearing that "implication" would "extend" them "to almost every thing."[27] He also warned that the Judiciary would become an instrument for enlarging federal authority, predicting that we would "extend the limits of the general government gradually" through "a series of determinations," ultimately "facilitati[ng] the abolition of the state governments."[28] Our reliance on *Scarborough* combines these fears: our decisions now expand federal power not by remote implication from the constitutional text, but by remote implication from our own precedents.

While Brutus's fears of the total abolition of the States may have been overstated, the steady expansion of federal power has nonetheless deprived

---

[23] *Id.* (emphasis added).

[24] *See Hill v. Colorado*, 530 U.S. 703, 753 (2000) (SCALIA, J., dissenting).

[25] 567 U.S. 519 (2012).

[26] *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

[27] Brutus, Essay XII (Feb. 7, 1788), *reprinted in* 2 THE COMPLETE ANTI-FEDERALIST 422, 425 (Herbert J. Storing ed., 1981).

[28] Brutus, Essay XV (Mar. 20, 1788), *reprinted in* 2 THE COMPLETE ANTI-FEDERALIST, *supra*, at 441.

the States of much of their freedom to pursue innovative, locally tailored solutions to vexing problems. Most debates over felon disarmament focus on the Second Amendment (which I address below). But there is also a serious question about whether some individuals who may constitutionally be disarmed should nevertheless have their rights restored.[29] In the system the Framers designed, the States could—within constitutional bounds—serve "as laboratories for devising solutions" to that "difficult legal problem[]."[30] By contrast, in the world § 922(g(1) has created (and we have blessed), such experimentation is foreclosed by the long arm of the general government— much like the world Brutus feared.

\*     \*     \*

As one of our colleagues has observed, "our circuit precedent dramatically expands the reach of the federal government under the Commerce Clause. No Supreme Court precedent requires it. And no proper reading of the Commerce Clause permits it."[31] That alone is reason enough for the full court—or, if need be, the Supreme Court—to take up the question and reexamine our precedent.

## II

Of course, even Congress's limited powers are further constrained by the rights secured in the Bill of Rights, including the Second Amendment's guarantee that "the right of the people to keep and bear Arms, shall not be

---

[29] *See Seekins*, 52 F.4th at 992 (HO, J., dissenting from the denial of rehearing en banc) ("Americans disagree passionately over a wide range of issues—including a variety of criminal justice issues, such as whether felons should be punished for possessing firearms." (citations omitted)).

[30] *Oregon v. Ice*, 555 U.S. 160, 171 (2009) (citing *New State Ice Co v. Liebmann*, 285 U.S. 262, 311 (1932) (BRANDEIS, J., dissenting)).

[31] *Seekins*, 52 F.4th at 992 (HO, J., dissenting from denial of rehearing en banc).

infringed."[32] In *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court instructed courts to ask whether firearm regulations like § 922(g)(1) are "consistent with this Nation's historical tradition of firearm regulation."[33] Numerous panels of this court have undertaken that inquiry with commendable diligence and care. But I am not sure we have always approached it with the methodological precision that *Bruen* demands.

A

First, *Bruen* and its follow-on case, *United States v. Rahimi*, make clear that the relevant tradition is "this Nation's historical tradition of *firearm* regulation."[34] Yet our cases have at times relied on a wide range of historical laws that were, in no meaningful sense, "firearm regulations." For example, when we first grappled with *Bruen*'s application to § 922(g)(1) in *United States v. Diaz*, we analogized to statutes authorizing capital punishment for felonies.[35] But capital punishment is a "firearm regulation" only in the loosest sense.

That is not how the Supreme Court conducts its own history-and-tradition analyses. Every historical analogue the Court considered in *Bruen* and *Rahimi* was, in fact, a regulation specifically governing firearms.[36] True, in *Diaz* we observed *Rahimi*'s reference to surety

---

[32] U.S. Const. amend. II.

[33] 597 U.S. 1, 17 (2022).

[34] *Id.* (emphasis added); *see United States v. Rahimi*, 602 U.S. 680, 691 (2024) ("In *Bruen*, we directed courts to examine our 'historical tradition of *firearm* regulation' to help delineate the contours of the right." (emphasis added) (quoting *Bruen*, 597 U.S. at 17)); *id.* at 708 (Gorsuch, J., concurring) (asking "whether th[e] law . . . is consistent with historic *firearm* regulations" (emphasis added)).

[35] 116 F.4th 458, 467–71 (5th Cir. 2024).

[36] *See Bruen*, 597 U.S. at 40–70; *Rahimi*, 602 U.S. at 693–700.

laws, which we noted "were not explicitly related to guns, yet sometimes applied to limit their possession."[37] But we did not confront why the *Rahimi* Court found it "[i]mportant[]" that many surety laws "*targeted* the misuse of firearms."[38] *Diaz* also sought to distinguish *Bruen*'s exclusive reliance on "explicit firearm regulation[s]," reasoning that "*Bruen* was addressing the constitutionality of a statute that . . . appli[ed] to everyone equally," whereas § 922(g)(1) "focuses on a specific group of people."[39] But like § 922(g)(1), § 922(g)(8)(C)(i)—the statute at issue in *Rahimi*—also applies to a specific group, and yet the *Rahimi* Court still found it significant that the historical analogues on which it relied "targeted the misuse of firearms."[40]

Even if laws not specifically directed at firearms are part of "this Nation's historical tradition of *firearm* regulation,"[41] it is not clear that regulations imposing only incidental burdens on the right to bear arms are "relevantly similar" to direct prohibitions on Second Amendment-protected conduct.[42] When comparing a modern regulation to a historical analogue, "how the regulation burdens the right" is "central" to our inquiry.[43] And a direct prohibition burdens the right in a fundamentally different manner from a regulation that imposes only an incidental one. We acknowledge that

---

[37] *Diaz*, 116 F.4th at 468.

[38] *Rahimi*, 602 U.S. at 696 (emphasis added).

[39] *Diaz*, 116 F.4th at 468.

[40] *See Rahimi*, 602 U.S. at 696.

[41] *Bruen*, 597 U.S. at 17 (emphasis added).

[42] *See Rahimi*, 602 U.S. at 692 ("A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit . . . ." (quoting *Bruen*, 597 U.S. at 29)).

[43] *Id.*

distinction in other contexts;[44] it is not clear why we should treat it as irrelevant here.

B

Second, *Bruen* and *Rahimi* instruct us to "consider[] whether the *challenged regulation* is consistent with the principles that underpin our regulatory tradition."[45] In a § 922(g)(1) case, the "challenged regulation" is, of course, § 922(g)(1) itself. The question, then, is whether *§ 922(g)(1)*, as applied to a particular defendant, comports with the Second Amendment—not whether some *hypothetical* statute could constitutionally apply to the defendant. For the most part, our cases have recognized this principle and have thus limited their analysis to the facts that trigger § 922(g)(1)'s ban on firearm possession—namely, "prior convictions that are 'punishable by imprisonment for a term exceeding one year.'"[46]

At times, however, we have slipped into a hypothetical "what-if" statute analysis, treating § 922(g)(1) as though it were some imagined statute altogether. In one case, for example, we relied in part on felonies for which the defendant was convicted *after* the charged possession[47]—even though § 922(g)(1) concerns only the "defendant's criminal record at the time of the

---

[44] *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (explaining that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech").

[45] *Rahimi*, 602 U.S. at 692 (emphasis added); *see Bruen*, 597 U.S. at 17 ("[T]he government must demonstrate that *the regulation* is consistent with this Nation's historical tradition of firearm regulation." (emphasis added)).

[46] *Diaz*, 116 F.4th at 467 (quoting 18 U.S.C. § 922(g)(1)); *see also, e.g.*, *United States v. Kimble*, 142 F.4th 308, 318 (5th Cir. 2025); *United States v. Morgan*, 147 F.4th 522, 528 (5th Cir. 2025); *United States v. Betancourt*, 139 F.4th 480, 483 (5th Cir. 2025).

[47] *See United States v. Reyes*, 141 F.4th 682, 686 (5th Cir. 2025) (per curiam).

charged possession."[48] In another, we relied on the fact that the defendant was intoxicated when he possessed a firearm.[49] We reasoned, in essence, that Congress *might* have passed a law barring firearm possession by those who are intoxicated, and thus § 922(g)(1) *could* apply to individuals who were intoxicated.[50] But Congress has not enacted such a law. And if it had, the defendant could have insisted that the Government prove his intoxication to a jury beyond a reasonable doubt—with all the procedural protections the Constitution affords—rather than to a judge under a preponderance standard and with minimal procedural safeguards.

When it adopted § 922(g)(1), Congress decided what facts should be relevant to a § 922(g)(1) prosecution. I doubt we are empowered to shield particular § 922(g)(1) prosecutions from constitutional scrutiny by relying so heavily on extraneous facts—particularly when those facts have not passed through the adversarial gauntlet required for other facts necessary to the imposition of criminal punishment.

\* \* \*

No doubt, applying the Second Amendment to § 922(g)(1) is a challenging task. I do not pretend to have all the answers. But in these two respects, I harbor serious reservations that our analysis has been consistent with *Bruen* and *Rahimi*.

---

[48] *Burrell v. United States*, 384 F.3d 22, 27 (2d Cir. 2004); *see United States v. Ortiz*, 927 F.3d 868, 874 (5th Cir. 2019) (noting that the predicate conviction must occur "before the defendant possessed th[e] firearm").

[49] *See United States v. Contreras*, 125 F.4th 725, 733 (2025).

[50] *See id.* at 732–33.

Two Second Amendment cases are currently pending before the Supreme Court—one originating in our own circuit.[51] Perhaps those decisions will clarify how courts should treat non-firearm-related laws as historical analogues under *Bruen*, and define more precisely the limits of judicial authority to look beyond the challenged regulation itself. But if not— and perhaps even if so—our full court should, at the right opportunity, take a fresh and unflinching look at our Second Amendment methodology.

---

[51] *See United States v. Hemani*, No. 24-40137, 2025 WL 354982 (5th Cir. Jan. 31, 2025) (per curiam), *cert. granted*, No. 24-1234, 2025 WL 2949569 (U.S. Oct. 20, 2025); *Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024), *cert. granted*, No. 24-1046, 2025 WL 2808808 (U.S. Oct. 3, 2025).