# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2025

Lyle W. Cayce
Clerk

No. 24-20070

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JOSEPH LEE BETANCOURT,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CR-229-1

---

Before STEWART, DENNIS, and HAYNES, *Circuit Judges*.

HAYNES, *Circuit Judge*:

Joseph Lee Betancourt appeals from his conviction for firearms possession under 18 U.S.C. § 922(g)(1), the felon-in-possession statute. He argues that the statute, as applied to him in this case, violates the Second Amendment. For the reasons below, we disagree and thus AFFIRM his conviction.

No. 24-20070

## I.   Background

### A. Procedural History

On December 28, 2019, Harris County Sheriff's Office deputies responded to a 911 call at Betancourt's home in Channelview, Texas. The caller was Betancourt's sister-in-law, Brenda Rodriguez. Rodriguez said Betancourt brandished a firearm during an argument with his brother, Jacob Emerson. Betancourt reportedly kicked in a bedroom door and pointed the firearm at Emerson while Emerson was holding his one-year-old daughter. Betancourt demanded money and a ride to retrieve his vehicle, which had been towed that morning after he was found to be driving without a license.

Betancourt was arrested, and during a search of the safe in Betancourt's bedroom, deputies found two guns, 399 rounds of ammunition, and body armor. The guns were manufactured outside the state. A review of Betancourt's criminal history revealed prior felony convictions for aggravated assault.

Rodriguez and Emerson said Betancourt "often retrieves firearms from his safe and holds them when behaving confrontationally" and added that, several times, "gunfire ha[d] occurred in the residence from both Betancourt and unknown persons who discharged weapons at the home." Officers saw multiple bullet strikes on the walls, floor, windows, and kitchen appliances and on the surface of Betancourt's safe.

A federal grand jury charged Betancourt with two counts of violating 18 U.S.C. § 922(g)(1). As relevant here, that statute prohibits possession in interstate commerce of firearms or ammunition by "any person" who "has

been convicted in any court" of "a crime punishable by imprisonment for a term exceeding one year." *Id.*

Betancourt moved to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment. The district court denied the motion.

Betancourt and the Government subsequently entered a plea agreement under which Betancourt reserved his right to appeal the district court's denial of his motion to dismiss. Betancourt accordingly pleaded guilty to the second count of the indictment and was sentenced to time served and three years of supervised release. Betancourt then timely appealed.

### B. The Predicate Felony

When Betancourt was 19, he was charged with aggravated assault, a felony, in two separate criminal cases arising out of the same incident. Betancourt had been driving at his vehicle's maximum speed of 107 miles per hour, with the accelerator fully activated. He disregarded a flashing red light and caused a major collision. His vehicle flipped several times, and his passenger was ejected from the vehicle. The passenger and the driver of the other vehicle were hospitalized. The passenger needed stitches to close a laceration on her face, and the other driver needed surgery to repair a ruptured small intestine.

Betancourt pleaded guilty in both cases and was sentenced to concurrent three-year terms in custody. These convictions constituted the predicate felony for Betancourt's prosecution under § 922(g)(1).

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231, which grants to federal district courts original jurisdiction over "all offenses against the laws of the United States." We have jurisdiction over Betancourt's appeal under 28 U.S.C. § 1291.

No. 24-20070

We review the constitutionality of a federal statute de novo. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000).

## III.    Discussion

In *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court set forth a two-part framework for determining whether a government regulation violates the Second Amendment. *See* 597 U.S. 1, 17 (2022).[1]  First, a court must determine whether the Second Amendment's plain text[2] covers the regulated conduct; if so, the Constitution presumptively protects that conduct. *Bruen*, 597 U.S. at 17.  Second, to overcome the presumption, the government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*[3]

The Supreme Court applied the *Bruen* framework in a later case, *United States v. Rahimi*, in which the Court rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(8)[4] and held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 602 U.S. 680, 702 (2024).  In doing so, the Court in *Rahimi* reaffirmed its

---

[1]  Unlike this criminal case, *Bruen* was a civil case brought by "law-abiding" citizens.  597 U.S. at 15.

[2] The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II; *see District of Columbia v. Heller*, 554 U.S. 570, 576 (2008).

[3] At the time *Bruen* was decided, the Supreme Court arguably did not conceive of its new framework as involving two steps.  *See Bruen*, 597 U.S. at 19 ("Despite the popularity of this [prior] two-step approach, it is one step too many.").  However, we have previously characterized *Bruen* as setting forth a two-step approach, so we do the same here. *See United States v. Schnur*, 132 F.4th 863, 867 (5th Cir. 2025).

[4]  Under § 922(g)(8), persons subject to certain domestic violence restraining orders are prohibited from possessing firearms in interstate commerce.

previous statement that prohibitions "on the possession of firearms by 'felons and the mentally ill[]' are 'presumptively lawful.'" *Id.* at 699 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008)).

Betancourt brings facial and as-applied Second Amendment challenges to § 922(g)(1). In *United States v. Diaz*, we applied *Bruen* and *Rahimi* in considering facial and as-applied Second Amendment attacks on the same statute. *Diaz*, 116 F.4th 458, 472 (2024), *petition for cert. filed*, No. 24-6625 (U.S. Feb. 18, 2025). Importantly, we denied the defendant's facial challenge to § 922(g)(1). *Id.* at 471–72. Thus, facial challenges are foreclosed in our court. [5]

*Diaz* allows as-applied challenges. Such challenges fail if "regulating [the defendant]'s possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 24). In short, the question in *Diaz* was whether "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" the relevant criminal history of the defendant, Ronnie Diaz, Jr. *Id.* The *Diaz* panel defined Diaz's relevant criminal history as consisting of "prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *Id.* (quoting 18 U.S.C. § 922(g)(1)). Diaz's such prior convictions included "car theft, evading arrest, and possessing a firearm as a felon." *Id.*

The *Diaz* panel then rejected Diaz's Second Amendment challenge. The panel concluded that at the time of the Founding, Diaz's theft conviction

---

[5] Betancourt concedes that his facial challenge is foreclosed by *Diaz*, which was decided during the pendency of this appeal. Further, Betancourt contends that § 922(g)(1) violates the Commerce Clause, but he concedes that this argument, too, is foreclosed by circuit precedent. *See United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996) (per curiam). Thus, we don't address those arguments.

would have been a felony and "thus would have led to capital punishment or estate forfeiture" and that "[d]isarming Diaz fits within this tradition of serious and permanent punishment." *Id.* at 469–70.  The panel further concluded that Founding-era state governments "could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons" and enacted "statutes that . . . authorized forfeiture of weapons as punishment." *Id.* at 470 (citation omitted).  "The size of these laws' burden on the right to bear arms," the panel held, "is comparable to that of § 922(g)(1)." *Id.* at 471; *see also United States v. Williams*, 113 F.4th 637 (6th Cir. 2024).

With the above legal framework in mind, we turn to Betancourt's as-applied challenge.  In analyzing *Diaz* as applied to Betancourt, we look at his aggravated assault convictions arising from the car crash he caused.  He argues that this incident, which he characterizes as involving mere reckless driving rather than intentional violence, cannot constitutionally serve as predicate for disarming him under § 922(g)(1).  Betancourt contends that his crime did not involve the misuse of a firearm and that the closest Founding-era analogue is therefore battery, which he says was a misdemeanor at the time rather than a felony punishable by death or permanent disarmament.

We disagree.  The details of Betancourt's aggravated assault convictions show that his Second Amendment challenge must fail.  As described above, Betancourt disregarded a flashing red light while driving at his vehicle's maximum speed, 107 miles per hour, causing a major crash and serious injuries to two people.  He accordingly "poses a threat to public safety." *United States v. Schnur*, 132 F.4th 863, 870 (5th Cir. 2025) (rejecting as-applied Second Amendment challenge to § 922(g)(1) where defendant's predicate offense did not involve the use of a firearm).[6]  Specifically, he

---

[6] As in *Diaz*, we concluded in *Schnur* that the Government had satisfied its burden under the *Bruen* inquiry because "there are historical analogues demonstrating our

"put" his passenger's "safety at risk," *Williams*, 113 F.4th at 659, along with the safety of the driver of the other vehicle, who needed surgery after Betancourt caused the crash. In short, the Second Amendment does not prohibit applying § 922(g)(1) to him here. *See Schnur*, 132 F.4th at 869; *Williams*, 113 F.4th at 659; *Diaz*, 116 F.4th at 470 (concluding that Founding-era governments "could prevent people who had committed crimes . . . from accessing weapons").

We therefore are unpersuaded by Betancourt's argument that there is not a sufficiently apt Founding-era analogue for his aggravated assault convictions under which the Founding generation would have disarmed the offender. The Supreme Court made clear in *Rahimi* that *Bruen* "w[as] not meant to suggest a law trapped in amber." *Rahimi*, 602 U.S. at 691. Rather, "the appropriate analysis involves considering whether the challenged regulation is consistent with *the principles* that underpin our regulatory tradition." *Id.* at 692 (emphasis added); *see also id.* (stating that the Government need not identify a Founding-era "dead ringer" for, or a "historical twin" of, a modern regulation (quotation omitted)). Cases like *Diaz*, *Schnur*, and *Williams* demonstrate the existence of a Founding-era legal tradition that was applied in a way "relevantly similar" to the application today of § 922(g)(1) to Betancourt. *Bruen*, 597 U.S. at 29; *see Rahimi*, 602 U.S. at 692 (stating that the challenged regulation could pass constitutional

---

Nation's longstanding tradition of disarming persons with a violent criminal history analogous to" the defendant's. 132 F.4th at 869; *see also id.* (stating that historically, Americans have disarmed felons for multiple reasons, "including when an individual is deemed a threat to public safety"). It is unnecessary to repeat here the descriptions of the Founding-era affray and "going armed" laws that formed the basis for this conclusion. Those laws were ably detailed by the *Schnur* panel. *See id.* at 868–70; *see also Rahimi*, 602 U.S. at 693–98 (similar); *Diaz*, 116 F.4th at 470–71 (similar); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam) (similar).

muster even if it "does not precisely match its historical precursors"). We conclude based on that similarity that Betancourt's as-applied challenge fails.

## IV.    Conclusion

For the reasons above, we AFFIRM the judgment of the district court.