# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 10, 2025

Lyle W. Cayce
Clerk

No. 24-50284

United States of America,

*Plaintiff—Appellee*,

*versus*

Deimon Nolan Simpson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:23-CR-25-1

Before Elrod, *Chief Judge*, and Duncan and Engelhardt, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

Deimon Nolan Simpson pleaded guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). On appeal, he challenges the district court's denial of his motion to dismiss the indictment. His as-applied Second Amendment challenge fails because the felon-in-possession statute constitutionally disarms those whose predicate convictions involve violence. And our case law forecloses Simpson's other two challenges. We therefore AFFIRM the district court's denial of the motion to dismiss.

No. 24-50284

In January 2023, police officers responded to a disturbance at a house in Odessa, Texas. According to the property owner, Simpson had recently been evicted from the house, and a new tenant was living there. When Simpson saw someone inside what he believed was his house, he retrieved a gun from his car and attempted to enter through the front door. The new tenant blocked Simpson's entry, so Simpson climbed through the window and shot the tenant's dog.

Simpson was charged with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), which forbids "any person . . . who has been convicted" of "a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce[] any firearm or ammunition." 18 U.S.C. § 922(g)(1). The district court denied Simpson's motion to dismiss the indictment, and Simpson pleaded guilty. In the factual basis for his plea, Simpson admitted that he had at least the following felony convictions: possession of a controlled substance, evading arrest or detention with a vehicle, and being a felon in possession of a firearm. We review challenges to the constitutionality of a federal statute *de novo*. *E.g.*, *United States v. Betancourt*, 139 F.4th 480, 482 (5th Cir. 2025); *United States v. Connelly*, 117 F.4th 269, 273 (5th Cir. 2024).

On appeal, Simpson insists that § 922(g)(1) violates the Second Amendment as applied to him.[1] Because that Amendment's text, protecting "the right of the people to keep and bear Arms," U.S. Const. amend. II, "covers the conduct" that § 922(g)(1) prohibits, *United States v. Diaz*,

---

[1] Simpson also raises two other challenges to his conviction—namely, that § 922(g)(1) facially violates the Second Amendment and exceeds Congress's Commerce Clause power. But he admits that circuit precedent forecloses both. *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert. denied*, --- S. Ct. ---, 2025 WL 1727419 (2025); *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013). We therefore do not address those challenges.

116 F.4th 458, 467 (5th Cir. 2024), *cert. denied*, --- S. Ct. ---, 2025 WL 1727419 (2025), it "presumptively protects that conduct," *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). "The burden thus shifts to the government to demonstrate that regulating [Simpson's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation,'" *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 24)—that is, "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition," *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

To justify a disputed firearm regulation, the government must "identify a well-established and representative historical analogue," *Bruen*, 597 U.S. at 30, which must be "relevantly similar" to the challenged regulation, *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 29). "[C]hallenged and historical laws are 'relevantly similar' if they share a common 'why' and 'how.'" *Connelly*, 117 F.4th at 274. If "contemporary laws" impose "similar restrictions" to address similar problems as a Founding-era law that regulated firearm use, the two laws will share a sufficiently similar "why." *Rahimi*, 602 U.S. at 692; *Connelly*, 117 F.4th at 274. And a "challenged law" uses a "sufficiently historically similar 'how'" as the historical comparator if the former does not regulate "beyond what was done at the Founding." *Connelly*, 117 F.4th at 274 (quoting *Rahimi*, 602 U.S. at 692).

The Constitution permits disarming individuals who pose a clear threat of violence to others or whose predicate felony convictions involve violence. *See United States v. Reyes*, 141 F.4th 682, 686 (5th Cir. 2025) ("[O]ur Nation has a history of disarming those who . . . have been found to pose a credible threat to the physical safety of others." (citing *Rahimi*, 602 U.S. at 700)); *see also United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) ("The historical record demonstrates 'that legislatures have the

3

power to prohibit dangerous people from possessing guns.'" (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting))). For example, the Founding era's going-armed laws, which we have already deemed "relevant to § 922(g)(1)," *United States v. Morgan*, 147 F.4th 522, 529 (5th Cir. 2025), and to which the government points to justify Simpson's conviction, "confirm" that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed," *Rahimi*, 602 U.S. at 698; *see, e.g.*, *Morgan*, 147 F.4th at 529. Indeed, we have already concluded that § 922(g)(1) resembles going-armed laws in that both "impose[] 'permanent arms forfeiture as a penalty'—a consequence that places a 'comparable burden on the right of armed self-defense'—once an individual [is] convicted of a disqualifying offense." *Morgan*, 147 F.4th at 529 (quoting *Diaz*, 116 F.4th at 467, 471).

Accordingly, we have affirmed § 922(g)(1) convictions "if a defendant's predicate felony involves . . . violence." *United States v. Kimble*, 142 F.4th 308, 312 (5th Cir. 2025); *accord United States v. Schnur*, 132 F.4th 863, 870 (5th Cir. 2025) (concluding that historical laws "intended to 'mitigate demonstrated threats of physical violence'" justified permanent disarmament of a defendant "whose underlying conviction stemmed from the threat and commission of violence" (quoting *Bullock*, 123 F.4th at 185)).

This tradition and precedent justify Simpson's conviction under § 922(g)(1). Our review of the defendant's "conduct underlying the predicate offense is . . . permissible." *Morgan*, 147 F.4th at 528; *see Reyes*, 141 F.4th at 686 & n.8; *Betancourt*, 139 F.4th at 483–84; *United States v. Contreras*, 125 F.4th 725, 730 (5th Cir. 2025). As he admitted, Simpson has a prior felony conviction under Texas law for evading arrest or detention with a vehicle. *See* Tex. Penal Code Ann. § 38.04(b); *see also* Tex. Penal Code Ann. § 12.35. In an attempt to avoid police, who were trying to make a traffic stop, Simpson "accelerated" the car he was driving, "lost control[,] and

collided into a brick wall." He was then already a convicted felon, and he had cocaine and a loaded revolver in his possession.

This predicate felony supports Simpson's conviction here. We have previously treated evading arrest or detention with a vehicle as "violent conduct" that can support a conviction under § 922(g)(1). *Reyes*, 141 F.4th at 686–87, 686 n.8. In *Reyes*, an officer attempted to conduct a traffic stop of the vehicle that Reyes was driving, but Reyes "failed to yield, ran a stop sign, and continued to travel at a high rate of speed with [his] headlights off." *Id.* at 686 n.8. This kind of dangerous behavior resembles Simpson's. Similarly, in *Betancourt*, the defendant "disregarded a flashing red light while driving at his vehicle's maximum speed" of "107 miles per hour, causing a major crash and serious injuries to two people." 139 F.4th at 484. "[T]he Second Amendment d[id] not prohibit applying § 922(g)(1)" in that case. *Id.*

Section 922(g)(1) is thus constitutional as applied to Simpson. Like going-armed laws, § 922(g)(1) restricts "gun use to mitigate demonstrated threats of physical violence" but without "broadly restrict[ing] arms use by the public generally." *Morgan*, 147 F.4th at 529 (quoting *Rahimi*, 602 U.S. at 698). Indeed, the Texas statute under which Simpson was convicted seeks to "discourag[e] forceful conflicts between the police and suspects" by elevating the offense to a felony when the suspect has used a vehicle to evade arrest. *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd); *see* Tex. Penal Code Ann. § 38.04(b).

Simpson suggests that the predicate felony underlying a § 922(g)(1) conviction should involve "misuse of a firearm." Our cases indicate otherwise. *E.g.*, *Betancourt*, 139 F.4th at 484 (noting use of a vehicle only); *Schnur*, 132 F.4th at 870 (upholding a § 922(g)(1) conviction where the predicate felony of a "crime of violence" did not "involve[] the use of firearms" because the conviction "indicate[d] that [the defendant] pose[d] a

No. 24-50284

threat to public safety and the orderly functioning of society" (quoting *Bruen*, 597 U.S. at 33–34)).  And in any event, Simpson had a loaded gun on him when he crashed the vehicle to evade arrest.

*    *    *

For all these reasons, we AFFIRM the judgment of the district court.