

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00115-CR

———————————————

CATDERIAN DEJUAN STRONG, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1786726

---

Before Kerr, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellant Catderian Dejuan Strong shot Marquece Taylor fourteen times, killing him. A jury rejected Strong's self-defense and defense-of-others theories and convicted him of murder, *see* Tex. Penal Code Ann. §§ 9.31, 9.32, 19.02. It found that he had committed the murder under the immediate influence of sudden passion, *see id.* § 19.02(d), found that he was a repeat offender based on his 2021 conviction of unlawful possession of a firearm by a felon, and assessed his punishment at 27 years' confinement. The trial court sentenced Strong accordingly.

Strong challenges his conviction in a single issue: that the trial court erred by failing to instruct the jury that when considering his defensive theories, it should have presumed that Strong's belief—that the deadly force he used was immediately necessary—was reasonable. *See id.* §§ 2.05, 9.31(a), 9.32(b). Underlying this alleged charge error, Strong admits that he had prior convictions for felony-level evading-arrest and unlawful-possession-by-a-felon offenses. But he argues that because Section 46.04 of the Texas Penal Code—unlawful possession of a firearm by a felon—is unconstitutional under the Second Amendment as applied to him, he was not engaged in criminal activity—being a felon who unlawfully possessed a firearm—when he shot and killed Marquece, entitling him to a presumption-of-reasonableness instruction. *See id.* §§ 9.31(a)(3), 46.04; *see also* U.S. Const. amend. II. We will affirm.

2

# I. Background

## A. The shooting

On July 1, 2023, Kiana Williams had a pool party at her apartment complex. Kiana's friend Nashae Boykin (who was temporarily living with Kiana), Kendra McDonald (Kiana's cousin), Strong (Nashae's brother), and Marquece (Nashae's "baby daddy") attended the party. Everyone was drinking hard liquor and was either "drunk" or "intoxicated."

Kiana, Kendra, and Strong briefly left together. When they returned around 10:00 p.m., they observed Nashae and Marquece outside and upset. Kiana recalled that Nashae was "bleeding everywhere," and Nashae told them that Marquece had punched her in the mouth.[1] According to Nashae, Marquece "was like, [y]eah, I did it[,] and I'd do it again."

Strong argued with Marquece, which escalated to their punching each other. Kiana and Kendra tried to get them to stop fighting, and when the fight stopped, multiple witnesses thought that Strong had "won." Strong, Nashae, and Kendra walked up to Kiana's apartment. Marquece followed them upstairs, and while on the landing, Strong shot Marquece fourteen times and killed him.

---

[1]It is not clear what else Nashae said in the moment, but at trial, she said that Marquece had beat her up after she had refused his sexual advances.

## B. The trial

The State charged Strong with and tried him for Marquece's murder, and his primary defensive theories were self-defense, defense of others, and necessity. Neither Kendra nor Kiana wanted to testify at trial but did so under the State's subpoena; both Nashae and Strong testified. Each account varied, particularly with reference to the presence or absence of a gun on the coffee table in Kiana's apartment.

### 1. Kendra's testimony

Kendra testified that Strong went into the apartment first, then Nashae, and she followed them. At the time, she knew someone was behind her but did not know who it was. When asked what happened once she was inside, Kendra testified, "As soon as I opened the door, I was like, [n]o, no, no, you don't want to do this." She continued, "[T]hen the shots rang off[,] and I ran" into a back room. When asked why she had told Strong "you don't want to do this," she reiterated that it was "[b]ecause as soon as [she] walked in the door, [Strong] was standing there" with a gun in his hand. She did not see the actual shooting.

### 2. Kiana's testimony

Kiana testified that she did not see anything. She said that "when Marquece walked off and went up the stairs and followed him, . . . [she] was still standing right there [on 'the grass area'] because [she] was mad." When asked how soon the shots were fired after Marquece had gone upstairs, she testified, "I don't remember. . . . [I]t happened so quick, because I didn't even get a chance to walk[,] and it happened." She

4

could not describe how Marquece went up the stairs. And as for the gun, Kiana testified that she did not have a gun in her apartment and had not seen one on her coffee table that day.

### 3. Nashae's testimony

Nashae testified that after Marquece's fight with Strong, Marquece walked over toward his car. Although she did not see a gun in Marquece's hand that night, she testified that he typically kept a hidden gun under his car. She said, "We were already upstairs, and then that's when he came up the steps." Nashae said that she, Kendra, and Strong were trying to hold the door back while Marquece tried to push it open. She said that once the door opened, she "had already took off running" to lie on a bedroom floor "because [she] started hearing shooting."

When she returned, she saw Marquece on the ground, but neither Strong nor Kendra was there. Nashae testified that she had feared that Marquece would kill or hurt her if he entered the apartment. She also claimed that Marquece had threatened Strong's life after their earlier fight, telling "him he was going to give him something he could feel."

But on cross-examination, Nashae confirmed that she had not provided any of these details to the responding officers; specifically, she did not tell them that Marquece was trying to break through the door. When asked whether Marquece had a gun, she admitted that she did not see Marquece or Strong with a gun. She also admitted that after Strong and Marquece's fight, she had thought they "were going to hash it out, go

5

back upstairs, take some more shots and, you know, apologize, talk about the situation." And when asked, "Do you think your brother had to kill [Marquece]," Nashae said, "No."

### 4. Strong's testimony

Strong's counsel asked him whether he had "ever been to the penitentiary." Strong conceded that he had, for "[u]nlawfully carrying a weapon," and that he had also been to state jail for evading—admitting that he had previously run from the police. On cross-examination, Strong admitted that he had been a felon since his August 2017 evading conviction, which led to two September 2021 convictions for unlawful possession of a firearm by a felon. He also testified to having misdemeanor convictions for three vehicle burglaries and another evading offense.

The State questioned Strong about his using a firearm to shoot Marquece:

Q. So the gun that you used to shoot him, you just left it there at the scene?

A. Yes, sir.

Q. Okay. You didn't try to get rid of it at any time?

A. No, sir.

Q. You know as a felon you're not supposed to own a gun, right?

A. Yes, sir.

Q. Okay. You're not supposed to be around guns, right?

A. Yes, sir.

Despite this acknowledgment, Strong admitted that he had caused Marquece's death by shooting him with a firearm, which Strong agreed was a deadly weapon.

Strong wanted the jury to believe that he had acted in self-defense or in defense of others. According to Strong, after his fight with Marquece, he left when he "heard [Marquece] say . . . he was going to do harm to me." Strong said that he, Nashae, and Kendra walked up to the apartment, and he estimated that Marquece came up about two or three minutes later. Although Strong testified that he had felt threatened and had feared Marquece, he also said that he had not thought that Marquece was going to come upstairs.

But once he did, Strong described the situation as "a bunch of chaos at once." He said Nashae and Kendra "were closing the door," and he told them, "[D]on't let him come in here." Strong testified, "I didn't know what he was coming upstairs for, so I retreated to the weapon [sitting on a coffee table in the apartment] when I seen him. And I -- I shot him."[2] He testified, "I didn't want to take any chances."

Strong said that he was scared for his life because earlier that day, before his fight with Marquece, Marquece had shown him a handgun—albeit in a non-threatening manner. Yet when Strong shot Marquece, he admitted that he "did not see him having

---

[2] Strong denied bringing the gun and said that he did not know to whom it belonged, but he also acknowledged that he had brought his "luggage" to Kiana's apartment earlier that day.

one"; he claimed that Marquece was "forcing his way in" the apartment and that he "was afraid for everybody over there."

When asked how many times he shot Marquece, Strong answered, "Too many."[3] And he admitted that after shooting Marquece, he "took off," stepping over Marquece's body before taking an Uber to his father's house.

## C. The jury charge

During the guilt–innocence phase's charge conference, Strong requested a presumption-of-reasonableness instruction, *see* Tex. Penal Code Ann. § 9.32(b)(3), and raised his Second Amendment arguments. The State argued that Strong was not entitled to an instruction on the presumption of reasonableness because he was engaged in criminal activity when—as a convicted felon—he unlawfully possessed a firearm in violation of Section 46.04. *See id.* § 46.04.

Strong's counsel argued that although Strong had been convicted of the felony offenses of "evading with a vehicle" and two prior state felon-in-possession offenses[4]—which had not been set aside—he should be viewed as a "non[-]violent felon" for

---

[3]The medical examiner testified that Strong shot Marquece fourteen times.

[4]Neither Strong nor the State offered into evidence Strong's judgments of conviction during the guilt–innocence phase, so those documents were not before the trial court during the charge conference. Strong's counsel told the court that Strong had an evading-with-a-vehicle conviction, but the type of evading conviction was not before the court until the punishment phase, when Strong stipulated to the trial court's admitting his felony convictions, which include his judgment of conviction for evading with a prior conviction.

purposes of determining whether he had a Second Amendment right to possess a firearm when he shot Marquece. Counsel argued that "he was not actually a felon in possession of a firearm . . . [and met] the requirements of the presumption that he was not engaging in conduct that was illegal" and that "he didn't lose his gun rights under the 2nd Amendment."

The trial court denied Strong's request and charged the jury as follows after setting out the self-defense and defense-of-others justifications:

> In determining the defendant's reasonable belief that the use of deadly force was necessary, you may not consider whether the defendant failed to retreat. You are also instructed that a person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described above.

> Being a felon in possession of a firearm is a third[-]degree felony.

## D. The conviction

The jury rejected Strong's defenses and found him guilty of murder. During punishment, Strong pleaded true to a repeat-offender enhancement. The jury found that he had proved that he had acted under the immediate influence of sudden passion and assessed his punishment at 27 years' confinement. The trial court sentenced him accordingly.

## II. Discussion

In his sole issue, Strong complains that the trial court failed to instruct the jury on the presumption of reasonableness, raising an as-applied challenge to the

constitutionality of Section 46.04 of the Texas Penal Code under the Second Amendment. *See id.* § 46.04. We conclude that Strong has failed to demonstrate error.

## A. Standards of Review

We review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Garrett v. State*, No. 02-25-00049-CR, 2025 WL 3039150, at *1 (Tex. App.—Fort Worth Oct. 30, 2025, pet. ref'd) (mem. op., not designated for publication). If no error occurred, our analysis ends. *Kirsch*, 357 S.W.3d at 649; *Garrett*, 2025 WL 3039150, at *1.

Further, whether a criminal statute is constitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Modarresi v. State*, 488 S.W.3d 455, 465 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (setting out standard for as-applied challenge). A person challenging the constitutionality of a statute has the burden of showing it is unconstitutional. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). "Statutes are presumed to be constitutional until it is determined otherwise." *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).

## B. Instructing the Jury on the Presumption of Reasonableness

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a); *see also id.* § 9.33 (describing when a person is justified in using deadly force to protect third persons). Deadly force may be used when and to the degree the actor further

reasonably believes that such force is immediately necessary to protect the person from another person's "use or attempted use of unlawful deadly force" or to prevent the other person's commission of certain enumerated offenses, including murder. *Id.* § 9.32(a); *see also id.* § 9.33. "Reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42).

Since 2007, an actor's belief that deadly force was immediately necessary is presumed to be reasonable under certain circumstances. *Morales v. State*, 357 S.W.3d 1, 6 (Tex. Crim. App. 2011). As is relevant here, "[t]he actor's belief . . . that the deadly force was immediately necessary . . . is presumed to be reasonable if the actor . . . was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used." Tex. Penal Code Ann. § 9.32(b)(3); *see id.* § 9.31(a)(3). An instruction on the presumption of reasonableness must be included in the jury charge if sufficient evidence exists of the facts giving rise to the presumption "unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." *Id.* § 2.05(b)(1); *Morales*, 357 S.W.3d at 7.

## C. Section 46.04 of the Texas Penal Code

Under Section 46.04, a convicted felon commits an offense if he possesses a firearm "after conviction and before the fifth anniversary of [his] release from confinement following conviction of the felony or [his] release from supervision under

11

community supervision, parole, or mandatory supervision, whichever date is later." Tex. Penal Code Ann. § 46.04(a)(1). After that period, such a person commits an offense if he possesses the firearm at "any location other than the premises at which the person lives." *Id.* § 46.04(a)(2).

"Possession of a firearm by a convicted felon is a third[-]degree felony," and felonies fall within the statutory prohibition against engaging in criminal activity during the use of force. *Larrinaga v. State*, No. 02-14-00199-CR, 2015 WL 4730710, at *3 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication) (citing Tex. Penal Code Ann. § 46.04(e)); *see* Tex. Penal Code Ann. §§ 9.31(a)(3), 9.32(b)(3). Indeed, trial courts have routinely refused to instruct juries on the presumption of reasonableness when the evidence demonstrates a defendant's violation of Section 46.04 at the time of his use of force, and appellate courts have upheld such refusals. *See, e.g.*, *Marshall v. State*, No. 01-23-00503-CR, 2025 WL 1759021, at *10–11 (Tex. App.—Houston [1st Dist.] June 26, 2025, pet. filed) (mem. op., not designated for publication); *Johnson v. State*, No. 01-15-00101-CR, 2016 WL 4536954, at *12–14 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, pet. ref'd) (mem. op., not designated for publication); *Larrinaga*, 2015 WL 4730710, at *2; *McCurdy v. State*, No. 06-12-00206-CR, 2013 WL 5433478, at *4 (Tex. App.—Texarkana Sept. 26, 2013, pet ref'd) (mem. op., not designated for publication); *Davis v. State*, No. 05-10-00732-CR, 2011 WL 3528256, at *10–11 (Tex. App.—Dallas Aug. 12, 2011, pet. ref'd) (not designated for publication). But none of these cases have involved a

12

constitutional challenge to Section 46.04. *See Marshall*, 2025 WL 1759021, at \*10–11; *Johnson*, 2016 WL 4536954, at \*12–14; *Larrinaga*, 2015 WL 4730710, at \*2; *McCurdy*, 2013 WL 5433478, at \*4; *Davis*, 2011 WL 3528256, at \*10–11.

**D.    The Second Amendment**

Strong admits that he was a convicted felon at the time he shot and killed Marquece. But unlike the defendants in the above authorities, Strong maintains that the trial court should have instructed the jury on the presumption of reasonableness because—according to him—Section 46.04 is unconstitutional under the Second Amendment as applied to him. We disagree.

We begin our analysis with the text of the constitutional provision at issue, followed by a review of the relevant caselaw.

The Second Amendment provides that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. Const. amend. II; *see McDonald v. City of Chicago*, 561 U.S. 742, 791, 130 S. Ct. 3020, 3050 (2010) (providing that the Second Amendment applies to the states through the Fourteenth Amendment). In determining whether a challenged law violates the Second Amendment, a court must consider whether the Second Amendment's plain text covers the individual's conduct and then, if the challenged regulation implicates a Second Amendment right, the State must show that the regulation is consistent with this country's historical tradition of firearms regulation. *United States v. Cockerham*, 162 F.4th 500, 505 (5th Cir. 2025). In *Cockerham*, the Fifth Circuit discussed the Supreme Court's recent Second Amendment cases: *District of*

13

*Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022); and *United States v. Rahimi*, 602 U.S. 680, 144 S. Ct. 1889 (2024). *See id.* at 502–09.[5]

In *Heller*, the Supreme Court wrote that the Second Amendment protects the "right of law-abiding, responsible citizens" to possess firearms "in defense of hearth and home," and "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626, 635, 128 S. Ct. at 2816–17, 2821. The Court referred to such prohibitions as "presumptively lawful regulatory measures." *Id.* at 627 n.26, 128 S. Ct. at 2817 n.26.

Then, fourteen years later, the Supreme Court enunciated its historical-analysis test for evaluating regulations on an individual's right to bear arms. *Bruen*, 597 U.S. at 24, 142 S. Ct. at 2130. Its analysis focused on the right of "ordinary, law-abiding citizens" to carry a firearm outside the home. *Id.* at 9, 142 S. Ct. at 2122, 2132–33, 2156; *see id.* at 81, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (reiterating *Heller*'s statement that nothing in that opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). *Bruen* did not overrule *Heller*'s statement that "nothing in [that] opinion should be taken to cast doubt

---

[5]We note that although Fifth Circuit decisions may be persuasive, we are not obligated to follow them in the same way as we must follow the precedent of our State's highest courts and the United States Supreme Court. *Bundy v. State*, 280 S.W.3d 425, 432 n.5 (Tex. App.—Fort Worth 2009, pet. ref'd).

14

on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626, 128 S. Ct. at 2816–17.

Most recently, the Court upheld a federal law temporarily disarming persons who were subject to restraining orders. *Rahimi*, 602 U.S. at 697–98 144 S. Ct. at 1901. The Court conducted a historical analysis and concluded that two categories of historical laws "confirm[ed] what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698, 144 S. Ct. at 1901. Although the Court could have revisited and rejected its previous statements about laws restricting felons' firearms possession, the Court instead reiterated that prohibitions on the possession of firearms by felons are presumptively lawful. *Id.* at 699, 144 S. Ct. at 1902 (rejecting Rahimi's argument that *Heller* had invalidated absolute prohibitions of handguns in the home, stating, "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons['] . . . , are 'presumptively lawful'").

Following *Heller*, *Bruen*, and *Rahimi* in *Cockerham*, the Fifth Circuit reasoned that the Supreme Court's failure to enunciate a categorical felon-disarmament ban "by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge." 162 F.4th at 503–04 (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)). To illustrate application to a "non-violent" felony, the Fifth Circuit examined whether a person could be deprived

of his Second Amendment rights when he had pleaded guilty to failing to pay child support but was not delinquent of such conduct when he was found in possession of a firearm. *Id.* at 504. Upon concluding its historical analysis, the Fifth Circuit held that when the defendant's sole predicate offense was failure to pay child support, for which he was not sentenced to a single day in prison, 18 U.S.C. § 922(g)(1) was unconstitutional as applied to him based on historical law applying to debtors rather than thieves. *Id.* at 504, 507 (noting that the relevant consideration is the defendant's prior convictions that are punishable by imprisonment for a term exceeding one year). On that record, the Fifth Circuit upheld Cockerham's as-applied challenge. *Id.* at 510; *see also Range v. Att'y Gen.*, 124 F.4th 218, 222–23 (3rd Cir. 2024) (en banc) (upholding as-applied challenge when criminal history consisted of the defendant's making false statements to obtain food stamps).

On the other hand, the Fifth Circuit has rejected as-applied challenges involving violent felonies. *See, e.g., United States v. Reyes*, 141 F.4th 682, 687 (5th Cir. 2025); *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024). In *Diaz*, the defendant's predicate offenses of theft of a vehicle, evading arrest or detention with a vehicle, and felon-in-possession-of-a-firearm were sufficient to defeat his as-applied challenge to 18 U.S.C. § 922(g)(1); the court noted that when the Second Amendment was ratified, those guilty of certain crimes like theft were punished permanently and severely, and permanent disarmament was part of the country's arsenal of available punishments at the time. 116 F.4th at 462, 472.

16

Similarly, in *Reyes*, the defendant's convictions for evading arrest with a vehicle, drug possession and delivery, and unlawful firearms possession doomed his as-applied challenge. 141 F.4th at 687; *see also United States v. Simpson*, 152 F.4th 611, 613 (5th Cir. 2025) (rejecting an as-applied challenge involving convictions for possession of a controlled substance, evading arrest or detention with a vehicle, and being a felon in possession of a firearm); *United States v. Betancourt*, 139 F.4th 480, 484 (5th Cir. 2025) (same involving aggravated-assault conviction), *cert. denied*, 2026 WL 135617 (2026); *United States v. Alaniz*, 146 F.4th 1240, 1241–42 (5th Cir. 2025) (same involving controlled-substance and burglary predicate offenses).[6]

Each of these cases involved direct appeals from federal firearms-possession convictions. Here, Strong relies solely on *Cockerham* and *Range* to launch an as-applied challenge to Section 46.04's constitutionality—not in the context of seeking to overturn a conviction for unlawfully carrying a firearm as a felon but in the context of whether

---

[6]A number of other federal circuit courts have similarly rejected as-applied Second Amendment challenges when the person's underlying criminal history included violent felonies. *See United States v. Hunt*, 123 F.4th 697, 700–04 (4th Cir. 2024) (involving breaking and entering), *cert. denied*, 145 S. Ct. 2756 (2025); *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) (involving two controlled-substance convictions), *cert. denied*, 145 S. Ct. 2708 (2025); *United States v. Duarte*, 137 F.4th 743, 748–52, 761–62 (9th Cir. 2025) (en banc) (involving convictions for vandalism, unlawful possession of a firearm, evading (twice), and possession of a controlled substance), *cert. denied*, 2026 WL 135692 (2026); *cf. Zherka v. Bondi*, 140 F.4th 68, 77, 93 (2nd Cir. 2025) (rejecting an as-applied challenge involving non-violent financial felonies), *cert. denied*, 2026 WL 135708 (2026); *Vincent v. Bondi*, 127 F.4th 1263, 1264–66 (10th Cir. 2025) (same involving bank fraud), *cert. denied*, 2026 WL 568283 (2026).

he was engaging in that criminal activity when he shot and killed Marquece for the purpose of the presumption-of-reasonableness instruction. Neither party has cited any Texas authority in which a party has so argued.

But this court has previously addressed the facial constitutionality of Section 46.04 in light of Second Amendment challenges, concluding that it is facially constitutional.[7] *See Ex parte Huell*, 704 S.W.3d 246, 247 (Tex. App.—Fort Worth 2024, no pet.) (affirming denial of pretrial habeas corpus application because Section 46.04 was not facially unconstitutional); *see also Jimison v. State*, No. 02-23-00084-CR, 2025 WL 52113, at *1–2 (Tex. App.—Fort Worth Jan. 9, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that Section 46.04(a) is facially constitutional and noting that "felon-in-possession statutes are permissible regulations under the Second Amendment"); *Ex parte Sharpe*, No. 02-24-00282-CR, 2024 WL 5162850, at *2 (Tex. App.—Fort Worth Dec. 19, 2024, pet. ref'd) (mem. op., not designated for publication) (relying on *Huell* to affirm denial of application for pretrial habeas relief based on facial challenge to Section 46.04); *Ex parte Strickland*, No. 12-24-00031-CR, 2024 WL 4471121, at *1 & n.1, *4 (Tex. App.—Tyler Oct. 9, 2024, pet. ref'd) (mem. op. on reh'g, not designated for publication) (affirming denial of application for writ of

---

[7]Strong has not raised a facial challenge to Section 46.04. *See Pokhrel v. State*, No. 02-25-00123-CR, 2025 WL 3119093, at *3 (Tex. App.—Fort Worth Nov. 6, 2025, no pet.) ("In a facial constitutional challenge, the claimant asserts that the complained-of law is unconstitutional on its face, meaning that it operates unconstitutionally in all of its potential applications." (citation modified)).

habeas corpus challenging Section 46.04 when prior felony conviction was DWI-3rd); *Swindle v. State*, No. 08-23-00057-CR, 2023 WL 7171472, at *1, *5 (Tex. App.—El Paso Oct. 31, 2023, pet. ref'd) (mem. op., not designated for publication) (affirming conviction for unlawful possession of a firearm by a felon over appellant's facial and as-applied challenges to Section 46.04 in light of his prior convictions for aggravated assault with a deadly weapon by threat, felony arson, terroristic threat, and assault–family violence). Although we have not yet addressed an as-applied challenge, as we noted in *Huell*, "[T]he Second Amendment does not prohibit the government's restriction of firearm possession by convicted felons." 704 S.W.3d at 250.

We find persuasive both the Fifth Circuit's analysis in *Diaz*, *see* 116 F.4th at 465–71, and the analysis our sister court performed in *Strickland*, *see* 2024 WL 4471121, at *4. In *Strickland*—arising from the denial of a pretrial writ of habeas corpus application based on the Second Amendment—the defendant had been indicted for being a felon in possession of a firearm, and his indictment identified his prior felony conviction as DWI-3rd or more. *Id.* at *1 & n.1. Our sister court observed that Section 46.04 "involves a prior finding that a person poses a threat to others, [that is], his alleged prior conviction of a felony offense, and, thus, 'fits neatly within the tradition the [historical] surety and going-armed laws represent,'" and, like those laws, "applies to individuals found to have threatened the physical safety of others *or otherwise shown a propensity for consequential lawlessness.*" *Id.* at *3 (emphasis added).

Our sister court noted that "such a prior finding resulting in a felony conviction has all the procedural and constitutional safeguards afforded by our judicial system." *Id.* Further, "Section 46.04 restricts gun use to mitigate either demonstrated threats of physical violence or prior disregard of penal law similarly to the manner the surety and going-armed laws do and does not broadly restrict arms use by the public generally." *Id.* If, as alleged in the indictment, the State proved that the defendant was a convicted felon, then he "is not a law-abiding citizen entitled to Second Amendment rights" under Supreme Court precedent. *Id.* at *4 (referencing *Bruen*); *see also Swindle*, 2023 WL 7171472, at *1, *5 (concluding that Section 46.04 was constitutional as-applied).

In an as-applied challenge—such as this one—the claimant "concedes the general constitutionality of the statute[ ] but asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018). Resolving an as-applied challenge "requires a recourse to evidence." *Id.* And a litigant raising an as-applied challenge "must show that, in its operation, the challenged statute was unconstitutionally applied to him; that it may be unconstitutional as to others is not sufficient (or even relevant)." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (orig. proceeding); *see Owens v. State*, 728 S.W.3d 155, 160 (Tex. Crim. App. 2025) (explaining that the merits of an as-applied challenge depend on the evidence: "The challenger must show that the statute was unconstitutionally applied to him.").

20

Here, during the guilt–innocence phase, Strong conceded the basics of his criminal record almost immediately upon taking the stand. Then, and during the State's cross examination, although his judgments of conviction were not before the trial court, he freely admitted to having two 2021 felony convictions for unlawfully carrying a firearm as a felon, and he admitted to having a 2017 felony-level evading conviction. He likewise admitted that he knew as a felon that he was not supposed to own or be around guns. No other details were given about his convictions, including whether he had pleaded guilty to the gun charges to avoid trial on more serious charges. And importantly, Strong presented nothing to rebut his own confession that he knew he was not supposed to own or be around guns. Nor did Strong demonstrate that any of his three prior felony convictions had been overturned.

At the charge conference, Strong's counsel argued that although Strong had been convicted of the felony offenses of "evading with a vehicle" and two prior state felon-in-possession offenses—which had not been set aside—he should be viewed as a "non[-]violent felon" for purposes of determining whether he had a Second Amendment right to possess a firearm when he shot Marquece. But counsel's arguments were not evidence that Strong's felonies were non-violent. *See Brumfield v. State*, No. 01-24-00166-CR, 2025 WL 1710287, at *15 n.26 (Tex. App.—Houston [1st Dist.] June 19, 2025, pet. ref'd) (mem. op., not designated for publication) ("The arguments of counsel are not evidence.").

Because, as our sister court noted in *Strickland*, Section 46.04 involves a prior finding that a person poses a threat to others, it fits neatly in the historical tradition of laws applying to individuals found to have threatened others' physical safety or otherwise having shown a propensity for consequential lawlessness and does not broadly restrict arms use by the public generally. *See* 2024 WL 4471121, at *3; *see also Swindle*, 2023 WL 7171472, at *4 ("[T]he United States Supreme Court [has] left generally undisturbed the regulatory framework that keeps firearms out of the hands of dangerous felons."). The trial court had before it Strong's admission to three prior felony convictions and his unrebutted admissions that he was not supposed to own or be around guns. We thus conclude that the trial court properly determined that the evidence adduced at trial was insufficient to give rise to the presumption of reasonableness; that is, because the trial court properly rejected Strong's attempted as-applied challenge from the evidence before it and determined that he was engaging in criminal activity when he shot and killed Marquece, it did not err by refusing Strong's requested instruction. *See* Tex. Penal Code Ann. § 2.05(b)(1); *Morales*, 357 S.W.3d at 7; *Duke v. State*, Nos. 05-24-01092-CR, 05-24-01093-CR, 2025 WL 2988742, at *4 (Tex. App.—Dallas Oct. 23, 2025, no pet.) (mem. op., not designated for publication) (rejecting as-applied challenge to Section 46.04 because the appellant failed to offer any supporting evidence). We overrule Strong's sole appellate issue.

### III. Conclusion

Having overruled Strong's sole appellate issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 26, 2026